## COMMONWEALTH LIFE INSURANCE COMPANY

v.

## Craig NEAL.

### Civ. A. No. 81–423–A.

United States District Court,
M. D. Louisiana.

Aug. 28, 1981.

Jacob J. Meyer, New Orleans, La., for plaintiff.

Kim Mayhall, Baton Rouge, La., for defendant.

### FINDINGS OF FACT AND CONCLUSION OF LAW

JOHN V. PARKER, Chief Judge.

Plaintiff, Commonwealth Life Insurance Company, seeks preliminary and permanent injunctive relief together with money damages. Plaintiff is a corporate citizen of Kentucky and the defendant, Francis Craig Neal, is a citizen of Louisiana, thus, there is diversity jurisdiction in this Court. 28 U.S.C. § 1332. The matter before the Court is plaintiff's motion for preliminary injunc-

tion which has been tried and submitted for decision.

In 1968, the defendant, Neal, became employed by First National Life Insurance Company as an insurance salesman, handling primarily "Industrial" or burial insurance. In 1971, First National merged with the plaintiff, Commonwealth. Defendant, and all other salesmen who remained as employees were required by Commonwealth to execute an employment contract which provided that upon termination of the contract:

"... Agent shall thereafter for a period of one year refrain from further solicitation or servicing of policy holders of the Company or of Fire & Casualty of any agency to which Agent has been assigned, or in anyway interfering with existing policies."

The contract is dated November 22, 1971. Subsequent to the merger, Neal advanced to selling various types of traditional life insurance policies. Although there was no geographic restriction upon his sales activities, Neal worked primarily in the area of Pointe Coupee Parish, Louisiana, and he reported to or in the terms of the contract "was assigned to" Commonwealth's Port Allen agency office. The defendant is obviously a very good salesman because his sales have ranked him as one of Commonwealth's top five salesmen each year since the merger and in 1980, he was the top salesman in the entire company.

In the latter part of 1980, Neal, having become dissatisfied regarding his compensation, requested modifications of those terms. Upon the refusal of Commonwealth, Neal resigned effective December 12, 1980. He then established agency relationships with several other insurance companies and went into business for himself. He has and is actively soliciting policyholders of Commonwealth and plaintiff here seeks a preliminary injunction against those activities for a period of one year from December 12, 1980.

Neal defends on several grounds, most related to Louisiana's statutory restriction upon employee "non-competition" agreements. LSA-R.S. 23:921.

■ Defendant first argues that the contract prohibits the salesman from soliciting only that restricted number of Commonwealth policyholders to which he was assigned by the company. He then argues that since the evidence shows that only a small initial list of burial insurance policyholders was ever assigned to him that he has not been "assigned" any policyholders. He then argues that he has not solicited any persons regarding the sale of burial insurance and that he has not violated his contract by soliciting other persons holding Commonwealth policies.

That argument does not impress. The Company assigns salesmen to Commonwealth agencies and the defendant was assigned to the Port Allen agency. The phrase in the contract, "to which Agent has been assigned," refers not to policyholders of the company but to the agency to which the salesman has been assigned. The contract prohibits Neal from soliciting any policyholders of Commonwealth written through the Port Allen agency and he freely admits that he is soliciting many of those people.

Next defendant argues that the contract is null because it contains a potestative condition, that is to say, one which makes the obligation depend solely upon the exercise of the obligor's will. LSA-C.C. art. 2034, 2035; *Franks v. Louisiana Health Services & Indemnity Co.*, 382 So.2d 1064 (La.App. 2nd Cir. 1980).

The contract contains a paragraph which provides that the company "may from time to time change any of the provisions" of the contract and that such changes "shall be binding on Agent when notice there ... has been deposited" in the mails. Neal argues that this is a grant of absolute discretion to the company and renders it a potestative condition which makes the entire contract null.

■ Assuming for purposes of argument that this clause does amount to a potestative condition, the evidence discloses that the contract has now been terminated and

that plaintiff performed its obligations under that contract. Defendant has not seasonably raised the issue of potestative condition and cannot, after plaintiff has performed the contract, object to lack of mutuality. *Ardoin v. Central Louisiana Electric Company, Inc.*, 306 So.2d 348 (La.App. 3rd Cir. 1975), affirmed 318 So.2d 5 (La.1975); *Maher & Sharkey, Inc. v. Newman*, 198 So.2d 162 (La.App. 1st Cir. 1967).

Next, defendant argues that the provisions of LSA-R.S. 23:921 render the non-solicitation clause null because plaintiff has not expended the necessary funds in training him and because the defendant did not execute the contract voluntarily. The statute read as follow:

"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and the employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that the employer is engaged in over the same route or in the same territory for a period of two years."

Louisiana thus prohibits agreements under which an employee agrees not to engage in a competing business with his former employer except where (1) employer and employee enter a "voluntary" agreement, (2) the employer has incurred a training expense or advertisement expense, (3) the restriction does not exceed a period of two years and (4) the restriction is limited to the same territory as that in which the employee worked.

Plaintiff points out that the contract involved here prohibits only the solicitation of customers of the former employer and does not in any other way restrict Neal from engaging in the insurance business. Plaintiff argues that the obvious purpose of this clause is to give the former employer a breathing spell (one year) in order to permit it to provide a new employee who can become familiar with the policyholders and compete with the former employee upon a more or less equal basis, and that this is a reasonable restriction considering the intensely personal nature of the insurance sales business and that LSA-R.S. 23:921 has no application to such contracts. Plaintiff argues that since the statute speaks only in terms of "entering into the same business," this statute simply has no application to its contract with Neal.

Defendant argues that the jurisprudence construes the statute to cover agreements not to solicit former customers as well as agreements not to engage in the same business. Both sides agree that there is a conflict in Louisiana jurisprudence.

A close examination of the jurisprudence shows, however, that Louisiana appellate courts have most recently found agreements not to compete and agreements not to solicit customers indistinguishable from each other and consequently both types of agreements are governed by Section 921.

The jurisprudence of the Third Circuit Court of Appeal is clear that both non-competition and non-solicitation agreements are covered by the statute. *Orkin Exterminating Company v. Broussard*, 346 So.2d 1274 (La.App. 3rd Cir. 1977), writ den., 350 So.2d 902 (La.1977); *National Motor Club of La. v. Conque*, 173 So.2d 238 (La.App. 3rd Cir. 1965), writ den., 247 La. 875, 175 So.2d 110. The basis for the reasoning behind that prohibition is set forth is the *Conque* case which involved a contract prohibiting an automobile club employee from soliciting customers of his former employer. The court commented:

"However, further thought has convinced us that the object of the present agreement is not 'lawful', unless supported by valid training and advertising expenses. By LSA-R.S. 23:921, the legislature has forbidden, with exceptions we have held not here applicable, that no employer may require 'any employee to enter into any contract whereby the employer agrees not to engage in any competing business for himself or as the employee of another.' The essence of the automobile club business is the selling of memberships to friends, acquaintances, and the general public. To require an employee to limit his activities in this regard after he ceases his employment, is to require him not to engage in a competing business, in violation of the statutory prohibition." (173 So.2d at 244)

The Louisiana Supreme Court has not squarely addressed this issue and the cases from Louisiana's four courts of appeal are not uniform. It is clear, however, that the Third Circuit has squarely held that there is no distinction between non-competition clauses and non-solicitation of customer clauses. The Fourth Circuit has also come down on this side of the argument. In *Alexander & Alexander, Inc. v. Simpson*, 370 So.2d 670 (La.App. 4th Cir. 1979), writ den. 371 So.2d 836 (La.1979), the Court had before it a contract under the terms of which the former employee could not solicit, sell to, divert, serve, accept or receive insurance agency, brokerage, or a consulting business . . . from any customer or active prospect . . .". The Fourth Circuit Court of Appeal cited *Orkin Exterminating Company, Inc. v. Broussard*, supra, with approval and specifically rejected the employer's argument that the statute was not intended to invalidate non-solicitation agreements. The Court noted that *Orkin* "found no distinction between non-competition and non-solicitation agreements and held that restrictive agreements are unenforceable unless the statutory provision applies" and then stated "We agree with this decision." (370 So.2d at 671)

Earlier, in *Bookkeeper's Business Service, Inc. v. Davis*, 208 So.2d 1 (La.App. 4th Cir.

1968) the Fourth Circuit had held that a contract forbidding the employee to solicit customers of the former employer was enforceable. That holding is at least impliedly overruled by the Court's later action in *Alexander & Alexander*. Any language to the contrary in the Fourth Circuit's opinion in *National Oil Service Inc. v. Brown*, 381 So.2d 1269 (La.App. 4th Cir. 1980) is dicta, since the Court held that plaintiff had failed to prove that there was even a contract in existence between the parties. The case of *John Jay Esthetic Salon, Inc. v. Woods*, 377 So.2d 1363 (La.App. 4th Cir. 1979), also cited by plaintiff, is distinguishable since that case involved an agreement not to hire employees of the former employer as opposed to solicitation of customers.

Louisiana's Second Circuit Court of Appeal held in *Delta Finance Co. of Louisiana v. Graves*, 180 So.2d 85 (La.App.2d Cir. 1965) that a contract reaching only non-solicitation of customers was enforceable. This holding has largely been eroded by that Court's later opinion in *Target Rental Towel, Inc. v. Byrd*, 341 So.2d 600 (La. App.2d Cir. 1977). In that case, the agreement contained both a traditional non-competition agreement as well as a non-solicitation of customers provision. The Court referred to the entire contract, however, as "as a non-competition" agreement and applied the proviso of LSA–R.S. 23:921. In its decision, the Court expressly disapproved of its opinion in *Delta Finance Company of Louisiana v. Graves*, supra, noting that *National Motor Club v. Conque*, supra, is the better reasoning.

The remaining circuit, the First Circuit, has not expressly passed upon the issue of non-solicitation agreements. In *Aetna Finance Company v. Adams*, 170 So.2d 740 (La.App. 1st Cir. 1964), writ refused, 247 La. 489, 172 So.2d 294, that court had approved the enforcement of a non-competition agreement simply when the employer showed that he had incurred nominal expenses. That case was expressly disapproved by the Supreme Court of Louisiana in *Orkin Exterminating Company v. Foti*, 302 So.2d 593 (La.1974). The First Circuit

Court of Appeal took note of this criticism in the later case of *Weight Watchers of Louisiana, Inc. v. Ryals*, 289 So.2d 531 (La. App. 1st Cir. 1974) and specifically placed itself behind the reasoning of *National Motor Club of Louisiana, Inc. v. Conque*, supra. It must be born in mind that the First Circuit cases addressed only the question of whether a traditional non-competition agreement is enforceable where the employer has incurred a minimal as opposed to a substantial expense and neither addresses the question of the enforcement of non-solicitation of customers.

Thus, the situation is that the Supreme Court of Louisiana has not spoken authoritatively on this question. Two of Louisiana's four circuits have squarely ruled in favor of the application of the statute to both non-solicitation of customer agreements and traditional non-competition agreements. Of the two remaining, one has not spoken at all on this question and the remaining, the Second Circuit, has indicated in dicta in *Target Rental Towel Inc. v. Byrd*, supra, that it approves of the reasoning of other courts which extend the prohibition to non-solicitation of customers.

■ Louisiana's certification process (Rule XII of the Rules of the Supreme Court of Louisiana) does not permit this Court to request an authoritative ruling on this issue from Louisiana's courts. Accordingly, we must resolve the issue based upon what we guess the Supreme Court of Louisiana would conclude if this issue were squarely presented to it. Two of Louisiana's four courts of appeal have held that the statute covers non-solicitation of customers. One is leaning in that direction and the remaining circuit has not spoken at all. Under these circumstances, we conclude that the Supreme Court of Louisiana, especially considering the reasoning of its opinion in *Orkin Exterminating Company v. Foti*, supra, would conclude that the statute was intended to include non-solicitation of customers, as well as traditional non-competition agreements.

Therefore, the agreement between Commonwealth and Neal which prohibits Neal from soliciting policyholders of Commonwealth for a period of one year following the termination of his employment is subject to the provisions of LSA–R.S. 23:921 and it is not enforceable unless Commonwealth can prove compliance with those provisions.

■ Defendant argues that the agreement was not "voluntary" because Commonwealth gave the employees no choice. The First National salesmen were told by the Commonwealth representative at the time of the merger that only those salesmen who executed the employment contracts would be retained by Commonwealth. Some of these persons refused and they left the company. Neal admits that he never read the contract until this controversy arose and that he signed the contract. We have found no Louisiana jurisprudence construing the "voluntary" requirement and none has been offered. We think, however, that the statute is not intended to curtail an employer's discretion in laying down uniform employment terms for all sales personnel. While admittedly, there is a disparity in bargaining power between the employer and most employees, I find no evidence that Neal's employment agreement was not "voluntary" within the meaning of the Louisiana statute.

■ In *Orkin Exterminating Company v. Foti*, supra, the Supreme Court of Louisiana held that, considering the history and legislative purpose of the statute, it protects an employer only where he has invested "substantial sums in special training of the employee or in advertising the employee's connection with his business." The court expressly held that normal expenses of administration and supervision, such as employee sales and training meetings, the time spent breaking in a new employee, training courses and the administrative needs of the employer itself, cannot be considered the sort of training expense intended to justify a heavily disfavored non-competition agreement. Moreover, the expenses incurred in training or advertising must be substantial not only in absolute terms but in relation to the period of the employee's service. The

court noted that where an employer has received the benefit of the investment through the employee's subsequent service, the amount becomes insubstantial in relation to the period of service.

Here, Commonwealth argues that it has established that during the period of Neal's service from 1971 through 1980, Commonwealth incurred the following "training expenses":

| | |
|---|---|
| Agent's Fundamental School, July, 1973 | $438.00 |
| Life Underwriters' Training Course, 1974 | 80.00 |
| Life Underwriters' Training Course, 1975 | 80.00 |
| Advanced Seminar, 1977 | 438.00 |
| TOTAL | $1036.00 |

■ The first three items do not meet the test of *Orkin Exterminating Co. v. Foti,* supra, because they are not "special training" expenses. The evidence establishes that these expenses were normal expenses of administration and supervision and that every employee of the company was required to attend these courses. They were primarily designed to familiarize the employee with the particular products offered by Commonwealth and its sales techniques. Moreover, these expenditures were all made during a period long before the defendant's resignation and do not appear to be substantial in relation to the period of his service, particularly considering that he was one of the top five salesmen in the company during each year of his service and the company certainly recouped far more than $1,000 from his activities.

The "Advance Seminar" in 1977 comes closer to qualifying as a "special training" expense. It is, however, insubstantial in relation to the employee's overall service and even if considered as "special training", the employer had clearly recouped its investment prior to Neal's termination in 1980. The evidence indicates that Neal's activities generated upwards of $275,000 annually in gross premiums.

■ In addition to the above listed sums, plaintiff also claims that amounts spent by it on "leader's club conferences" qualify as "special training". These conferences were held at various resort hotels and one was held aboard a cruise ship. They were referred to by various witnesses as "annual conventions" and employees were invited to attend these conventions based upon their sales activities. These "convention" activities were made available to employees and spouses conditioned upon their sales records. Because Neal had a top sales record, he was qualified to attend virtually all of them. One was held every year from 1972 through 1980 and the plaintiff calculates the total cost of defendant's travel, meals and lodging at $4,583.83. In addition, the company paid the travel, lodging and meal expense of Neal's wife. The testimony shows that there were no training experiences at these conferences. On the contrary, they were viewed more as a reward to the employee and to give him opportunity to have a vacation at company expense and most of the time was devoted to recreational activities which were discretionary with the employees. There were business meetings at these conventions but the primary function was awards which were handed out to various top salesmen and inspirational and motivational talks by company executives. These are certainly not the type of "special training" expenses which the Supreme Court of Louisiana envisioned in its *Foti* decision.

This Court therefore concludes that plaintiff has failed to prove that substantial training expenses were made by plaintiff in the special training of the defendant.

Plaintiff also claims it made substantial expenditures in advertising defendant's connection with the business. It filed in evidence copies of advertisements run in the Baton Rouge newspapers, the State-Times or the Morning Advocate. Three advertisements were run during 1976, two in 1977, one in 1978, one in 1979, and two in 1980. The plaintiff calculates its costs for these advertisements at about $3,700. Neal's photograph is depicted in some of the ads and in other ads, he is depicted as one of the staff of the Port Allen agency. Each of the advertisements solicits business for Commonwealth and particularly for Commonwealth's Port Allen agency and most solicit persons who are interested in becoming as successful as Neal to apply to Commonwealth for employment. This Court

does not consider that advertisement as tending to promote the employee as required by the *Foti* decision. Each was designed more to promote the sales of Commonwealth insurance or to solicit persons to come to work for Commonwealth than they were to promote Neal.

■ Under these circumstances, the Court finds that the plaintiff has not proved a sufficient expenditure of advertising expenses to authorize the enforcement of its contractual non-solicitation agreement. In addition, the Court finds that these expenses were insubstantial in relation to the length and productivity to Commonwealth of Neal's services.

The Court suggested to counsel that this matter be advanced for trial upon the merits along with trial of the motion for preliminary injunction but, since counsel objected, the Court did not require it. Accordingly, the only issue before the Court is the motion for preliminary injunction.

Under Rule 65, Fed.R.Civ.P., the Court is required to exercise discretion in issuing a preliminary injunction in the light of the four prerequisites for that extraordinary relief. *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974) points out that court must consider these factors: first, a substantial likelihood that the plaintiff will prevail on the merits; second, a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; third, that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and finally, that the granting of a preliminary injunction will not disserve the public interest.

Here, as has been pointed out, plaintiff has not established a substantial likelihood that it will prevail on the merits.

For the foregoing reasons, plaintiff's motion for preliminary injunction is hereby DENIED.