535 So.2d 1301 (1988)
STANDARD-CRESCENT CITY SURGICAL SUPPLIES, INC.
v.
Steven P. MOUTON.
No. 88-CA-427.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1988.
Robert G. Stassi, New Orleans, for plaintiff-appellee.
Gilbert R. Buras, Jr., Metairie, for defendant-appellant.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
Plaintiff, Standard-Crescent City Surgical Supplies, Inc. filed an injunction on March 4, 1988, against a former salesman, Steven Mouton, seeking to enjoin him from competing in the sale of surgical supplies. Standard's grounds for injunctive relief *1302 were the non-competitive covenants included in a sale agreement and employment contract executed by Mouton. As a result the court issued a Temporary Restraining Order on March 4, 1988, enforcing the non-competition agreements. On March 16, 1988, the court granted Standard's preliminary injunction and dismissed Mouton's Exception of Improper Venue and Motion to Dissolve the TRO.
From the judgment Mouton has appealed assigning the following errors for our review:
1. The trial court erred in failing to apply R.S. 23:921 to the non-competition clause contained in the employment contract.
2. The trial court erred in finding adequate consideration for the enforcement of the non-competition clause contained in the sale agreement between Standard and Mouton.
From September 1982, until November 1985, Mouton was employed by Crescent City Surgical Supplies, Inc. as a salesman and compensated on the basis of straight commission. On April 2, 1984, in recognition of his service to Crescent, Mouton received 50,000 shares (or 6.1%) of the total 815,000 outstanding shares of Crescent stock. The stock bonus gave Mouton no managerial function nor control over any employee of Crescent. He remained a commissioned salesman.
In late 1985, the majority stockholders of Crescent, namely, Michael McCrossen, David Davidson and Raphael Roy, Jr., instituted buy-out negotiations with a competitor, Standard Medical Supplies, for the sale of Crescent to Standard. These negotiations concluded with a purchase agreement on November 14, 1985, in which the shareholders of Crescent and DMR Enterprises (a Louisiana Partnership between Davidson, McCrossen and Roy) agreed to sell to Standard the medical supply business known as Crescent City Surgical Supplies, Inc., and, to DMR partnership, the land and building on which its offices were located. Mouton had no ownership in DMR at all.
For the sale of Mouton's 6.13% interest in Crescent City, he received the sum of $5,594.22 and was required to sign an employment agreement with the purchasers, namely, Walter Brown, Jack Dienes and Charles Gerrets. The buyers later merged the companies and renamed the newly created corporate entity "Standard-Crescent City Surgical Supplies, Inc."
In the employment agreement executed by Mouton, there is a reference to Paragraph 9 of the Sale Agreement which restricts the former shareholders of Crescent from competing with the buyers (Standard) for 3 years within 250 mile radius of Standard's Lime Street headquarters in Metairie, Louisiana.
Mouton and the other selling shareholders acknowledged and accepted the terms of paragraph 9 of the sale agreement.
On November 26, 1985, Mouton signed an employment contract with Crescent for a term commencing on that date and ending November 30, 1988. In paragraph 6 of this contract, Mouton agreed that any breach of the covenant not to compete stipulated in paragraph 9 of the sale agreement would also be a breach of the employment contract. Furthermore, in paragraph 12 of the employment contract, Mouton agreed that the prevailing party in any action arising under the contract would be entitled to recover all costs and expenses including reasonable attorney's fees incurred in the institution of any claim.
On January 1, 1986, Crescent City merged (was bought out) with Standard Surgical (which was owned by Brown, Dienes and Gerrets) and today is Standard-Crescent City Surgical Supplies, Inc.
Pursuant to said buy-out (merger), Standard-Crescent succeeded to all of the rights and obligations of Crescent, including those under the sale agreement and employment contract signed by Mouton.
In early March, 1988, Mouton resigned his employment with Standard-Crescent and began to work as a salesman for Standard-Crescent's competition, Taylor Medical of Louisiana, Inc.
Mouton clearly admits stock ownership of Crescent before the sale and was a seller of this interest to Standard. After the sale *1303 Mouton remained an employee, but argues the non-competition provision of the sale agreement (which is referred to in his employment agreement) is legally unenforceable because he was only an "employee" having no managerial rights or obligations. Furthermore, Mouton argues that any consideration he received was inadequate to bind him to the non-compete clause contained in the sale agreement. The trial court disagreed.
The trial court found that although both a sale agreement and an employment contract were executed in this matter, the sale agreement controlled. Additionally, the court ruled that adequate consideration was given Mouton, consequently the noncompete clause contained in the sale agreement had legal effect upon all parties.
The trial court found the agreement was a two-way street, Mouton received $5,500 and a three year contract and Standard-Crescent received Mouton's stock and a three year non-compete clause.
The trial court found that in addition to the transfer of the stock shares in exchange for $5,500, the parties exchanged equivalence when Standard-Crescent got Mouton for three years and Mouton got continued employment with the company. The court apparently felt that enjoining Mouton from competition with Standard-Crescent was the contractual equivalent of Mouton's rights to be maintained in his employment had the termination shoe been on the other foot. The court stated in oral reasons:
"I dare say ... had it been a situation where
the Dienes group, Standard-Crescent, said, "Look pal, we don't need you any more ... He (Mouton) would have hotfooted it to the Court and said, "Your Honor, I have an employment agreement with these people" ... I think I would have said, "Look ... you're stuck with him".
We do not agree with the trial court's reasoning and accordingly, we reverse.
Mouton was employed for a definite term, and should his employer (Standard-Crescent) discharge him before expiration of the employment contract, his remedy would not be forced employment for the duration of the unexpired term, rather it would be just compensation in the form of liquidated damages. LSA-C.C. art. 2749.
Similarly, when an employee quits his fixed term of employment prior to the expiration date, the employer's remedy is not an injunction to force him back to work or to keep him from working, rather the payment of liquidated damages is stipulated by law. LSA.C.C. art. 2750.
It is clear that agreements not to compete are obligations imposed upon the obligator, and should damages be inadequate, specific performance of an obligation may be compelled through injunctive relief. The agreements urged by Mouton contemplates injunctive relief. We must decide whether the relief sought meets the requirements of law.
Had the non-compete clause occurred only in Mouton's "Employment Agreement", Standard-Crescent would have had difficulty establishing its case. However, the existence of the collateral "Sale Agreement" (which was incorporated by reference into the employment contract) permitted Standard-Crescent to argue that LRS-R.S. 23:921 was inapplicable because Mouton was a shareholder (ownership interest) of Standard-Crescent's ancestor-in-business and was obligated, not as an employee, but as an owner/seller. Therefore, he could be held to the restrictions of the non-compete clause as part of the agreement to sell.
Mouton concedes that a seller of a business can be held to a non-compete clause; however, in such a situation, the non-compete covenant must still be fairly bargained for and its validity determined not by dictates of LSA-R.S. 23:921, but by the usual concepts of adequacy of consideration.
In Gold and Suckle v. Suckle, 335 So.2d 713 (La.App. 2nd Cir.1976) the Second Circuit stated:
We must first decide whether the agreement not to compete under consideration is ancillary to or is an incident of the sale of the business on August 31, *1304 1973, or whether it is a separate and independent employee-employer contract subject to the provisions of R.S. 23:921. While the employment contract was not signed for some three and one-half months after the sale of the business, the record shows that the employment contract containing the agreement not to compete was an incident of and was ancillary to the sale. The record shows that negotiations for the sale of the business and the retention of defendants as managerial employees of plaintiff corporation were conducted simultaneously. The several drafts of the employment contract contained a similar, but not identical, agreement not to compete. James Latham, plaintiff's president, considered the retention of defendants by the plaintiff corporation as a moving force or essential cause behind the purchase because he was not experienced in this particular business and it was his practice to have experienced management to conduct the day-to-day operations of the several corporate businesses owned by him.
We are required then to test the restriction in question as to its reasonableness in time and geographic limitation and for the existence of consideration, under the mandate of strict construction. See cases cited supra, Desselle v. Petrossi, 207 So.2d 190 (La.App. 4th Cir.1968) and 33 La.L.R. 94.
In Gold, the contract stipulated consideration of $10,000.00 annually for compliance under the non-competition clause. In Mouton's case, he received $5,500.00 for his stock and no compensation for the obligation not to compete.
Mouton owned 6.1% of the outstanding shares of Crescent City, shares he had been given as a sales bonus. Mouton was a salesman working on a straight commission basis and had no indicia of ownership; management or administrative authority; control or parity with other shareholders on essential matters concerning the company. In Winston v. Bourgeois, Bennett, Thokey and Hickey, 432 So.2d 936 (La. App. 4th Cir.1983) the Fourth Circuit gives us guidance in resolving the applicability of LSA-R.S. 23:921:
... [T]o determine the application of LSA-R.S. 23:921, numerous factors must be considered. The basic premise underlying the prohibition stems from the fundamental right of individuals to seek success in our free-enterprise society. The concept is to protect those whose job position creates a disparity in bargaining power between the parties. The form of the contract is immaterial as is the label tacked to the individual: Employee, associate, partner, independent contractor, or shareholder. Pertinent inquiry includes whether all concerned are bound equally to the covenant; whether the terms are fair to each party in all respects; the amount of control over the individual; if the person is subject to the wishes of a controlling majority; the circumstances under which the contract was executed; the effect on the individual's right to engage freely in his occupation after the association terminates.
We do not find these factors in Mouton's case. Mouton was merely a shareholder with fewer than 10% of the outstanding shares of stock and was given neither direct nor indirect managerial authority control or responsibility within the organization.
Mouton had only the most superficial involvement in the sale of Crescent City. Standard's witness, Jack Dienes, admitted that he never spoke to Mouton prior to the day of the sale, regarding terms and conditions thereof. Mouton, for his part, was simply presented with an already confected sale agreement which he signed, more as an accommodation than as an active business decision.
The trial court opined that Mouton's ownership of stock, regardless of the amount, necessarily took this case out of the restrictions imposed by LRS 23:921. We disagree. Mere ownership of stock in a company, standing alone, does not strip away the worker's label of employee for purposes applying LSA-R.S. 23:921.
In Target Rental Towel, Inc. v. Byrd, 341 So.2d 600 (La.App. 2nd Cir.1977), a *1305 shareholder's agreement stipulated a noncompete covenant which was held to be nothing more than an attempt to circumvent LSA-R.S. 23:921.
The Second Circuit observed that Byrd "... was paid nothing in dividends and his status in the corporation, even as a 1/3 minority shareholder, was subject to the decision of the corporate board of directors, which of course, was controlled by the 2/3 majority shares. The right to control the direction in the conventional sense of employment relation is one of the most important tests in determining whether one is an employee."
Token ownership of stock cannot be used as a justification for ignoring the public policy enunciated by courts interpreting LSA-R.S. 23:921.
To follow the trial court's reasoning would find many middle-level managers and other lower-level employees who have received their employer's stock as bonuses or incentives, shocked and dismayed to learn they could not accept a competitor's job offer without fear that they would be named as defendants in a lawsuit for injunctive relief because of some collateral shareholder's agreements or uncontemplated agreements perfected when the business is sold or purchased. With their stock (ownership) they have purchased expensive litigation. This type of situation is against good order, public policy and is repugnant to our law.
In this case, Mouton was in no position to dictate terms and conditions. The strength of the company he faithfully worked for was clearly positioned with his fellow majority shareholders. He was employed as a salesman and because of his hard-work and faithful duty to the company, he received a gift of stock and has been fictiously elevated to the contractual standard of conduct of a owner-manager. We disagree.
Accordingly, that judgment of the trial court decreeing a preliminary injunction issued against the defendant, Steven P. Mouton, prohibiting and enjoining him from competing with the plaintiff, Standard-Crescent City Surgical Supplies, Inc. is reversed and vacated. All costs of this appeal are to be paid by the appellee.
REVERSED AND VACATED.