**MEDX INC. OF FLORIDA**

v.

**Raymond T. RANGER.**

**Civ. A. No. 91–3099.**

United States District Court,
E.D. Louisiana.

Oct. 30, 1991.

Tommy Wood Thornhill and David L. Thornhill, Thornhill & Associates, Slidell, La., for MedX Inc. of Florida.

Robert L. Salim, Kelly & Salim, Natchitoches, La., Edward F. Kohnke, IV and James H. Brown, Jr., Lemle & Kelleher, New Orleans, La., for Raymond T. Ranger.

## ORDER AND REASONS

MENTZ, District Judge:

Before the Court is the plaintiff's demand for a preliminary injunction to prevent a former employee from continuing to violate certain contractual restrictive covenants. For the reasons set out below, the Court finds the plaintiff's demand to be well taken. Accordingly, a preliminary injunction will issue against the defendant pending the trial of this matter on the merits.

## I. FACTUAL BACKGROUND

On July 22, 1988, defendant Raymond T. Ranger entered into two contracts with plaintiff MedX, Inc., of Florida, a medical waste disposal company. These contracts consisted of an "Asset Purchase Agreement" and an "Employment Agreement." In section 1(a)(i) of the asset purchase contract, Mr. Ranger agreed to sell his business, Specialty Waste Management, Inc., to MedX. That section provided that Mr. Ranger would convey his business together with its name, goodwill, going concern value, and substantially all of its assets. Mr. Ranger worked for MedX under the terms of the employment contract from the date of the sale until March 16, 1990.

MedX has brought suit to enforce its rights under the employment contract. Section 6 of that contract purports to prevent Mr. Ranger from competing with MedX, accepting employment from its competitors, soliciting its clients or employees, or revealing MedX's trade secrets, all for a period of two years from the end of his employment with MedX. Mr. Ranger is currently doing all of these things, but he asserts that the restrictive covenants are invalid. Both of the contracts recite that they are to be governed by Florida law.

## II. APPLICABLE LAW

Because this Court is sitting in diversity, Louisiana's rules governing conflict of laws will determine whether the contractual choice of law clauses are enforceable. *Interfirst Bank Clifton v. Fernandez*, 853 F.2d 292, 294 (5th Cir.1988). Louisiana conflicts doctrine requires that a contractual choice of law clause be given effect " 'unless there is a statutory or jurisprudential law to the contrary justifying the refusal to honor the contract as written.' " *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir.1982).[1] Thus, because of the Florida law clauses in both contracts, that state's law will govern this matter unless strong concerns of Louisiana public policy require otherwise.

A. *Noncompete covenants in Louisiana: the general rule and the exception for the sale of a business*

Louisiana law provides extensive support for the general rule that most re-

---

**1.** Quoting *Associated Press v. Toledo Investors,*   *Inc.,* 389 So.2d 752, 754 (La.App. 3d Cir.1980).

strictive covenants in employment contracts are void due to conflict with strong public policy concerns. *See, e.g., ADR v. Graves,* 374 So.2d 699, 702 (La.App. 1st Cir.), *writ denied,* 377 So.2d 843 (1979). On several occasions, federal courts sitting in diversity have voided noncompetition and nonsolicitation covenants on the basis of that rule.[2] However, such covenants are not deemed contrary to public policy when they are specifically excepted by statute or caselaw from the general rule. *See Nat'l Oil Serv., Inc. v. Brown,* 381 So.2d 1269, 1272–73 (La.App. 4th Cir.1980).

Such an exception exists for restrictive covenants made in conjunction with the sale of a business. La.R.S. 23:921(B) (West Supp.1991) provides that any person "who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business...."[3] Agreements governed by this provision are enforceable by injunction "upon proof of the obligor's failure to perform [i.e. failure to refrain from competing], and without the necessity of proving irreparable injury...."[4]

This statutory exception to the general rule is a codification of jurisprudence that favors enforcement of noncompete covenants that are made in connection with the sale of a business. *See, e.g., Target Rental Towel, Inc. v. Byrd,* 341 So.2d 600, 603 (La.App. 2d Cir.1977) (clause enforceable against seller of going concern who remained employee of purchaser after sale).[5] In light of this line of authority, Mr. Ranger's specific sale of the goodwill of his business strongly suggests that the clause is enforceable. *See Hirsh v. Miller,* 167

So.2d 539, 541 (La.App. 2d Cir.1964). Thus, to the extent that the covenant at issue here falls within this exception, no Louisiana public policy objection will void the contractual choice of Florida law.

B. *Applicability of the exception*

1. The "single contract" question

■ Mr. Ranger has asserted vigorously that the restrictive covenant should not fall under the exception for the sale of a business because the covenant appears in the employment contract rather than in the asset purchase contract. This claim is without merit for two reasons. First, neither the statute nor the caselaw interpreting it creates a requirement that the clause be contained in the instrument of sale in order to be valid and enforceable. The statute merely recites that one who sells a business "may agree" with the buyer not to compete, and that injunctive relief is available when such agreements are violated. La.R.S. 23:921(B) (West Supp.1991). Furthermore, the Louisiana Second Circuit has found that the exception applied in a case where the asset purchase agreement and the noncompete covenant were in separate documents that were executed at different times. *Gold & Suckle, Inc. v. Suckle,* 335 So.2d 713, 715 (La.App.2d Cir.), *writ denied,* 338 So.2d 700 (La.1976).

Second, the simultaneity of the two agreements, as well as their similarity in subject matter, establish that they were two incidents of a single transaction. The agreements were executed on the same day, and testimony from Mr. Ranger and others at the preliminary injunction hearing demonstrated that the agreements were made in the larger context of the sale of

---

**2.** *See, e.g. NCH Corp. v. Broyles,* 749 F.2d 247, 251 (5th Cir.1985); *Fine v. Property Damage Appraisers, Inc.,* 393 F.Supp. 1304, 1310 (E.D.La. 1975); *Theatre Time Clock, Inc. v. Stewart,* 276 F.Supp. 593, 598–99 (E.D.La.1967).

**3.** *See Standard–Crescent City Surgical Supply, Inc. v. Mouton,* 535 So.2d 1301, 1303–04 (La. App. 5th Cir.1988) (noting that noncompete agreements are enforceable against a seller of a going concern). Because this statutory provision codifies a jurisprudential exception to the general rule of invalidity, and because this sec-

tion of the Court's opinion deals only with the question whether the noncompete agreement at issue is repugnant to Louisiana law as a whole, the effective date of this statute is of no consequence.

**4.** La.R.S. 23:921(F) (West Supp.1991).

**5.** Two other cases in this vein are *Marshall Brown Ins. Agency, Inc. v. Toledano,* 292 So.2d 266 (La.App. 4th Cir.1974), and *Hirsh v. Miller,* 167 So.2d 539 (La.App. 4th Cir.1964).

the business. For these reasons, it is evident that "the employment contract containing the agreement not to compete was an incident of and was ancillary to the sale." *Suckle*, 335 So.2d at 715–16.[6]

### 2. The statutory time limit

Mr. Ranger has correctly observed that a 1990 amendment to La.R.S. 23:921 modified the previous two-year limit on noncompete covenants made under the exception. The statute now provides that this two-year period is calculated from the date of the sale of the business. La.R.S. 23:921(B) (West Supp.1991). Mr. Ranger further claims that because the sale took place on July 22, 1988, the noncompete covenant expired on July 22, 1990. In opposition, MedX notes that the noncompete covenant does not expire under its own terms for two years "after the date that this [employment] agreement expires or is terminated for any reason." The parties terminated the employment agreement on March 16, 1990. For this reason, MedX claims that the noncompete covenant will not expire until March 16, 1992.

Mr. Ranger's argument assumes that this case only involves application of the Louisiana statute. However, the precise question to which the statutory exception applies is whether Louisiana law governs this case at all. Louisiana law gives effect to contractual choice of law clauses as a matter of course unless doing so would violate a strong public policy of the state. Because Louisiana law generally validates the *category* of noncompete covenant at issue here, it cannot be maintained that Louisiana law is gravely offended by the enforcement of such a covenant. Any argument to that effect would have the odd implication that a noncompete covenant of two years or less from the date of sale is entirely innocuous, while one of any greater duration violates a strong public policy. Accordingly, this Court finds that the ex-

ception for the sale of a business applies in this case.

### C. *The general rule and Louisiana public policy*

This District has previously ruled that Louisiana's strong public policy against noncompete covenants stems from " 'the disparity in bargaining power, under which an employee, fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away this liberty to earn his livelihood except by continuing in the employment of his present employer.' " *Fine v. Property Damage Appraisers, Inc.*, 393 F.Supp. 1304, 1310 (E.D.La.1975).[7] Many Louisiana courts have likewise advanced this interpretation. *See, e.g., National Oil Serv., Inc. v. Brown*, 381 So.2d 1269, 1272 (La.App. 4th Cir.1980).

■ The testimony in the preliminary injunction hearing clearly showed that the parties in this case dealt at arm's length, and that there was no taint of coercion or adhesion in their dealings. Therefore, the exception to the general rule, as well as the public policy supporting that rule, dictate that enforcement of the noncompete covenant is permissible under Louisiana law. *See Vault Corp. v. Quaid Software Ltd.*, 655 F.Supp. 750, 760 (E.D.La.1987). This conclusion also applies to covenants against solicitation of clients and compromise of trade secrets. *See id.* at 760; *Commonwealth Life Ins. Co. v. Neal*, 521 F.Supp. 812, 817 (M.D.La.1981), *aff'd*, 669 F.2d 300 (5th Cir.1982).[8] Thus, for all the reasons set out in this section, Florida law will govern this dispute.

### III. VALIDITY OF THE NONCOMPETE COVENANT UNDER FLORIDA LAW

Florida Statute 542.33(2)(a) (1990) provides in part that a seller of the goodwill of

---

**6.** *See also id.* (gap of more than one hundred days between the sale of the business and the signing of the employment contract did not prevent the latter from being ancillary to the sale); *accord Hirsh v. Miller*, 167 So.2d 539, 543 (La. App. 4th Cir.1964).

**7.** Quoting *Nat'l Motor Club, Inc. v. Conque*, 173 So.2d 238, 241 (La.App. 3d Cir.), *writ denied*, 247 La. 875, 175 So.2d 110 (1965).

**8.** For reasons of simplicity and readability, the remainder of this opinion will treat all three of these issues under the rubric of "noncompete covenants."

a business "may agree with the buyer ... to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area...." The statute specifically provides that such agreements are enforceable by injunction. *Id.* The statute further provides that such an injunction should issue if an appropriate court finds that (1) the injunction is not contrary to the health, safety, or welfare of the public; (2) the covenant not to compete is reasonable; and (3) there is an actual or presumed threat of irreparable injury.[9] *Id.* The reasonableness of the covenant is dependent upon its duration, its scope, and the balance of hardships between the plaintiff and the defendant. *Id.* Irreparable injury is presumed when the defendant "use[s] specific trade secrets, customer lists, or direct solicitation of existing customers." *Id.*

■ The Florida jurisprudence on this subject parallels the statute. Because "[m]onetary damages are typically quite difficult to establish, and often cannot adequately compensate for violations of restrictive covenants ...," injunctions are the normal and favored remedy for employers in Florida.[10] Furthermore, "irreparable injury may be presumed upon the breach of a valid covenant not to compete." *Capraro v. Lanier Business Prods., Inc.,* 466 So.2d 212, 213 (Fla.1985). Thus, if this Court finds the noncompete covenant to be reasonable, it is clearly enforceable under Florida law.

For the reasons set out in the section V(B) of this opinion, the balance of hardships favors MedX, and the geographical scope of the noncompete covenant will be so construed as to avoid undue hardship to Mr. Ranger. With respect to the duration of the agreement, Mr. Ranger has argued against the agreement's enforceability rather than the reasonableness of its duration. Furthermore, this Court finds that a period of two years from the termination of Mr. Ranger's employment is an appropriate amount of time for MedX to enjoy the fruits of its purchase of Mr. Ranger's going concern before having to face competition from him. Thus, under Florida law, the noncompete covenant at issue is reasonable and enforceable.

## IV. THE STANDARD FOR THE PRELIMINARY INJUNCTION

### A. *Applicable law*

Florida law provides that the same showing that establishes violation of a valid noncompete covenant also establishes, *ipso facto,* the element of irreparable harm.[11] Thus, if the Florida injunction standard is characterized as "substantive" rather than "procedural" law, and consequently binding on the Court in this diversity suit, MedX would not be held to the traditional Fifth Circuit four-part test. *See S. Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n,* 744 F.2d 1107, 1120 (5th Cir.1984) (the proposition is "well established" that when an injunction "is expressly authorized by statute and the statutory conditions are satisfied, the usual prerequisite of irreparable injury need not be established." (citations omitted)).[12]

There are several persuasive lines of reasoning and authority that would militate in favor of the "substantive" characterization. In *Guar. Trust Co. v. York,* 326 U.S. 99, 108–109, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945), the Supreme Court noted that a federal court cannot "substantially affect the enforcement of the right as given by

---

9. The facts that bear on these three factors are discussed in connection with the Fifth Circuit standard for preliminary injunctions. *See* section V, *infra.*

10. Tama K. Kirby, *Defending the Former Employee against Noncompetition Lawsuits,* 63 Fla. B.J. 53, 53 (1989), citing *Miller Mechanical, Inc. v. Ruth,* 300 So.2d 11 (Fla.1974).

11. *See* section III, *supra.*

12. *But see Pesch v. First City Bank of Dallas,* 637 F.Supp. 1539 (N.D.Tex.1986). In interpreting *South Central Bell,* the *Pesch* court ruled that a Texas statute providing that the rights it created "may be specifically enforced and the transfer of a certificated or uncertificated security enjoined ..." did not alter the preliminary injunction standard for a federal court sitting in diversity. *Id.* at 1542–43.

the state." In light of this pronouncement, a prominent treatise holds that "if the remedy being sought is so inextricably interwoven with the substantive right being sued upon that a denial of that remedy would be tantamount to a denial of the state-created right, then state law should apply." 11 Wright and Miller, *Federal Practice and Procedure* § 2943, at 389 (1973).

In this case, it seems that the right and the remedy are intertwined and equally substantive; the statute that creates the right to enforce noncompete covenants also specifically provides: "use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined." Fla.Stat. 542.33(2)(a) (1990). However, because the Court finds that MedX has satisfied both the traditional Fifth Circuit test and the less stringent Florida test, there is no need for a final ruling on this issue. See *Capital Tool & Mfg. Co., Inc. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir.1988) (declining to decide whether the federal or state standard for preliminary injunctions controlled where the two standards were substantially similar). Thus, this opinion will set out the traditional Fifth Circuit test and address that test's requirements on the facts of this dispute.

### B. *The Fifth Circuit four-part test*

■■■ Because preliminary injunctive relief is an extraordinary remedy, such relief should be granted as an exception rather than as the rule. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985). A preliminary injunction will issue only if the movant clearly establishes "(1) a substantial likelihood of success on the merits; (2) a

substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir.1985).[13] The movant bears the burden of establishing each of the four factors, and failure to meet any one of those factors will preclude issuance of the injunction. *Vault Corp. v. Quaid Software Ltd.*, 655 F.Supp. 750, 760 (E.D.La. 1987).

### V. APPLICATION OF THE FIFTH CIRCUIT STANDARD

#### A. *Success on the merits and the public interest*

■■■ The relevant law, the pleadings, and the hearing held on this injunction show that there is little genuine controversy regarding factors (1) and (4). Sections I, II, and III of this opinion have established that MedX will likely prevail on the merits. Moreover, the public interest will not be harmed by the outcome of this motion because the public's enjoyment of waste disposal services does not depend upon who markets those services. The two remaining issues, namely the balance of hardships and the potential for irreparable injury, require more extensive treatment.

#### B. *The balance of hardships*[14]

This issue is closely related to the geographical scope of the requested injunction. If the preliminary injunction enforcing the noncompete covenant only covers a limited area, Mr. Ranger will be able to ply his trade elsewhere. The noncompete covenant is silent regarding its geographical scope.[15] Accordingly, the Court "may re-

---

**13.** Citations omitted.

**14.** Paragraph 6(e) of the employment agreement recites in part that "[t]he Employee acknowledges that (i) the foregoing covenants are reasonable in scope and duration and (ii) he will be able to earn a living and provide for his family without violating the foregoing covenants." Such a recital cannot by itself determine of issue it addresses. *See Baker's Aid v. Hussmann*

*Foodservice Co.*, 830 F.2d 13, 16 (2nd Cir.1987). However, because the parties dealt with one another at arm's length, this recital militates in favor of MedX and complements the reasoning set out in this subsection of the opinion.

**15.** The absence of a geographical area term might be interpreted to mean that the clause was all-inclusive and spanned the globe in its effect. However, despite MedX's citation of

form the scope of the [noncompete] agreement to cover a reasonable area wherein [the movant] can prove the economic justification for its restraint, and excise any area wherein the restraint is not supported by economic justification and is therefore unreasonable." *Taylor v. Cordis Corp.*, 634 F.Supp. 1242, 1249 (S.D.Miss.1986).

Due to the lack of clear terms, the parties' intentions at the time they entered into the contract will govern the geographical scope of the restrictive covenants. To the extent that they can do so without rendering null any portion of the contract, the circumstances surrounding the agreement will serve as indicia of the parties' intent. *See Terex Trailer Corp. v. McIlwain*, 579 So.2d 237, 242 (Fla.App. 1st Dist. 1991). Moreover, because MedX drafted the employment agreement, and because it seeks to limit Mr. Ranger's right to work where he pleases, the noncompete covenant will be construed against MedX. *See* E. Allen Farnsworth, *Contracts* § 7.16, at 525 (1982).

Given the sale of Mr. Ranger's business, a Louisiana corporation with its principal place of business in Louisiana, any reasonable geographical limitation must include at least part of that state in order to effectuate the intent of the parties. During his tenure with MedX, Mr. Ranger was its marketing director for the state of Louisiana, and until the issuance of the temporary restraining order in this case, he worked in the same position for Eccor/Louisiana, Inc. Also, each of the four former MedX clients that MedX claims Mr. Ranger has won over to Eccor is located in or around New Orleans. Thus, the smallest reasonable geographical scope for a preliminary injunction consists of the state of Louisiana east of the Atchafalaya River, and the injunction ordered below will not extend beyond that area. *See Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir.1990) (upholding district court's definition of a reasonable area of effect for a noncompete covenant).

Enforcement of the noncompete covenant within these boundaries will not unduly burden Mr. Ranger in making his living and supporting his family. Furthermore, testimony at the preliminary injunction hearing established that Mr. Ranger would suffer no undue privation even if he were unable to work at his accustomed trade. Furthermore, the noncompete covenant will terminate by own provisions on March 16, 1992, so the period of hardship, if any, will be relatively brief. For these reasons, the threatened loss of clients, employees, and trade secrets that denial of the preliminary injunction would impose on MedX outweigh the consequences of the injunction to Mr. Ranger, particularly in light of the inadequacy of MedX's remedies at law.[16]

### C. *Irreparable injury* [17]

"The breach of a covenant not to compete may cause the loss of customers of an unascertainable number or importance." *Restatement (Second) of Contracts* § 360,

*Marshall v. Gore*, 506 So.2d 91 (Fla.App.2d Dist. 1987) for the proposition that a nationwide noncompete covenant can be enforced, a worldwide scope for this agreement would be manifestly unreasonable. Under either interpretation, therefore, reformation of the covenant is necessary for the purpose of ruling on the preliminary injunction.

**16.** *See* subsection V(C), *infra*.

**17.** This element appears to be established by Mr. Ranger's own admission. Paragraph XVII of MedX's complaint asserts that "Plaintiff has been damaged by Ranger's activities ... and Ranger's activities are further continuously irreparably damaging plaintiff in such a manner that plaintiff has no adequate remedy at law." Plaintiff's Complaint for Injunctive Relief, filestamped August 21, 1991. Defendant's Answer, filestamped September 9, 1991, "admits the allegations of Article[ ] ... XVII...."

Nonetheless, on page four of his Supplemental Memorandum of Law filestamped September 19, 1991, Mr. Ranger contends that "Movant [has] failed to put any evidence on to show that it would suffer 'a substantial threat of irreparable injury.' It is undisputed that Ray Ranger has solicited business from former MedX customers—but without convincing evidence that this would produce an irreparable injury, Movant cannot obtain injunctive relief."

Out of an abundance of caution, and due to the possibility that the admission was inadvertent, the Court finds it appropriate to address the issue of irreparable injury as though no admission had taken place.

comment b, at 172 (1982). The adequacy of remedies at law depends upon the availability of damage awards. However, "[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Id.*, § 352 at 144. Because there can be no "reasonable certainty" of the lost income of MedX's business as a result of Mr. Ranger's activities, MedX cannot recover that value in an action at law. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir.1990) (granting preliminary injunction due to the inadequacy of the remedy at law for a loss of customers).

In a very recent and factually congruent case, the Eleventh Circuit upheld a district court's issuance of a preliminary injunction due to the inadequacy of monetary damages as compensation for the loss of customers and goodwill. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991). The court also noted that the Fifth Circuit has ruled that such a loss constitutes "irreparable injury." *Id.*, citing *Spiegel v. Houston*, 636 F.2d 997 (5th Cir. Unit A 1981). Likewise, in its seminal case on the standard for preliminary injunctions, the Fifth Circuit stated that "the most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974), quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 2947, at 424 (1973). Such is the case here. If Mr. Ranger is allowed to continue to compete with MedX, the latter will suffer loss for which it will have no meaningful recourse to the courts.

This was also the conclusion of the court in *Taylor v. Cordis Corp.*, 634 F.Supp. 1242 (S.D.Miss.1986). In *Taylor*, the court found that absent a preliminary injunction, a medical supplies salesman could clearly inflict irreparable harm upon his former employer, Cordis, by transferring the goodwill and client base that he had developed while working at Cordis to one of its competitors. *Id.* at 1250. "Money damages for such a loss would be virtually impossible to compute, and equitable relief is prop-

er in the absence of an adequate remedy at law." *Id.* Mr. Ranger also works in the field of medical sales, and the similarity between his situation and the facts of *Taylor* argues that a finding of irreparable injury is appropriate in this case.

### D. *Conclusion*

As the preceding sections have shown, the four factors of the Fifth Circuit test are satisfied, and MedX is entitled to a preliminary injunction "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

Accordingly,

IT IS ORDERED that, effective immediately, the motion of plaintiff MedX, Inc. of Florida for preliminary injunctive relief is hereby GRANTED as follows:

(1) *RAYMOND T. RANGER* is ENJOINED from performing any of the following acts:

(a) maintaining or accepting employment with any person, organization, or entity that competes with *MedX of Florida*, or that directly or indirectly services or solicits customers who dealt with MedX during the term of Ranger's employment with it, in that portion of the state of Louisiana that is located east of the Atchafalaya River;

(b) providing or offering to provide services similar to those of MedX to any person, organization, or entity located within the area described above;

(c) interfering with business relations between MedX and any person, organization, or entity with which MedX had business dealings between September 16, 1989 and March 16, 1990. This includes, but is not limited to, solicitation of MedX's customers.

(2) This Order DOES NOT APPLY to the following customers that have already left MedX due to Mr. Ranger's efforts:

a. Children's Hospital

b. Surgiplex

c. Eye Care Associates

d. Prytania Surgery, Inc.

(3) If no further action of this Court intervenes, this Order will TERMINATE and be of no further effect at 12:01 a.m. on *MARCH 16, 1992.*