**A-COPY, INC., Plaintiff, Appellee,**

v.

**Phillip MICHAELSON, Defendant,
Appellant.**

**No. 78-1157.**

United States Court of Appeals,
First Circuit.

Argued May 4, 1978.

Decided May 22, 1978.

Marcus E. Cohn, Boston, Mass., with
whom Landis, Hochberg & Cohn, P. C., Bos-
ton, Mass., were on brief, for defendant,
appellant.

Richard C. Robinson, Hartford, Conn.,
with whom Sorokin, Sorokin, Hurwitz &
Wetstone, Hartford, Conn., was on brief,
for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMP-
BELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal under 28 U.S.C. § 1292 is
from an interlocutory order of the district
court granting a preliminary injunction.
The injunction has the effect of preventing
appellant Michaelson for the next year
from continuing to sell and service copying
machines in downtown Boston in competi-
tion with his former employer, A-Copy, Inc.

Michaelson was hired as a salesman by
A-Copy in December of 1975. A-Copy, a
Connecticut corporation, sells and services
various makes of copying machines and also
sells supplies. In his written contract of
employment, which was terminable at will
by either party, Michaelson agreed not to
engage in the sale or servicing of copying
equipment "[f]or a period of one (1) year
following the termination of employment"
in any territory in which he may have
worked for 18 months prior to termination

of his employment. Michaelson also agreed to refrain from contacting A–Copy customers after termination and not to disclose confidential information such as a customer list.

Although a successful salesman, Michaelson was discharged on February 17, 1977, because of suspicions by A–Copy that he was engaging in activities inconsistent with his duties and might be planning to compete directly with A–Copy in the copying machine business. Immediately following discharge, Michaelson proceeded to do just that; and there is little question that he has been engaging in activities contrary to the terms of the restrictive covenants. Michaelson does not claim otherwise, nor does he contend that the covenants are unreasonable, *see generally, All Stainless, Inc. v. Colby,* 364 Mass. 773, 777, 308 N.E.2d 481, 485 (1974), or that a Massachusetts court would not specifically enforce them in appropriate circumstances, *id.* Rather he strenuously contends before us, as he did in the district court, that his dismissal from A–Copy's employ was unwarranted and in bad faith, rendering the covenants unenforceable in a court of equity. *Economy Grocery Stores Corp. v. McMenamy,* 290 Mass. 549, 195 N.E. 747 (1935); *see New England Canteen Service, Inc. v. Ashley,* 1977 Mass.Adv.Sh. 1186, 1190, 1192–93, 363 N.E.2d 526, 528, 529–30; *cf. Fortune v. National Cash Register Co.,* 1977 Mass. Adv.Sh. 1569, 1574–78, 364 N.E.2d 1251, 1255–1257.

The present action was promptly commenced by A–Copy a week after Michaelson's discharge, as soon as the former heard of his competitive activities. Preliminary relief as well as damages and a permanent injunction were sought. Two months later, in late April of 1977, the district court held a two day hearing limited to the question of preliminary relief. In addition to affidavits, considerable testimony was received. The court took the case under advisement but, for reasons not apparent, rendered no decision for a year, during which period Michaelson not only sold and serviced copying machines in the area of his former employment but borrowed money and en-

larged his staff. Among his customers were former customers of A–Copy. Finally, on April 18 of 1978 the district court issued a Memorandum finding that A–Copy's discharging of Michaelson was "not arbitrary and capricious and was not in breach of implied covenants of good faith and fair dealing." A preliminary injunction was entered which, *inter alia,* enjoined Michaelson from engaging in copying machine sales and service in the area of his former employment. The injunction was to be effective upon the posting by A–Copy of a $10,000 bond and was to continue in effect for "one year from the date of entry . . . or until determination of the merits. . . ."

■ Michaelson argues first that "[i]t is well established that injunctive relief which gives a movant substantially the ultimate relief sought should not be granted." There is no such doctrine. Obviously the more drastic the effect of the injunction, the more carefully the district court should consider staying its hand. But the denial of preliminary relief may in some situations be as fraught with adverse consequences to plaintiff as the granting of relief is fraught with consequences to defendant. In such cases, a court may have no choice but to act even though its decision has the effect of providing most or even all of the ultimate relief in dispute.

■ Michaelson is on stronger ground in arguing that a court should be reluctant to grant preliminary relief if there is a close factual dispute which could go either way at the trial on the merits. This argument is merely another way of stating that one condition of preliminary relief is a showing that plaintiff will be likely to prevail on the merits. Obviously the more serious the harm to defendant of issuing a preliminary injunction, the stronger must be the showing that plaintiff will probably succeed. Here it is perhaps a closer question whether plaintiff will ultimately prevail than is often the case. A–Copy's president fired Michaelson over the protests of his immediate supervisor, without the courtesy of inviting

Michaelson's side of the story. While certain of Michaelson's conduct was suspicious and arguably lacking in candor, and while A–Copy's president appears to have been prompted by business considerations, the evidence of actual misconduct on Michaelson's part seems scant. We are troubled, moreover, by the district court's failure to grapple directly with the question of A–Copy's probability of success at a future trial. Doubtless the court felt that it did enough by determining, on the basis of a hearing consuming the better part of two days during which Michaelson, A–Copy's president and others testified, that A–Copy had demonstrated sufficiently good faith to enforce the covenants in equity. Still, this finding was not quite the same as determining whether Michaelson, armed with the fruits of discovery and more preparation, may yet have a fair chance of prevailing at an upcoming trial. Michaelson has apparently filed a jury claim. The district court's task was not so much to decide the case on the state of the evidence presented at the preliminary hearing as to arrive at an informed prediction of the relative certainty of A–Copy's success at trial. It would theoretically be possible to find that A–Copy's case was, on balance, the stronger, based on the showing at the preliminary hearing, but still to find the future outcome was uncertain.

■ While the court's failure to discuss probability of success in so many words gives us pause, we are nonetheless guided by the rule that "[a]n application for a temporary injunction is addressed to the discretion of the trial court and not to the discretion of the appellate court." *Benson Hotel Corp. v. Woods,* 168 F.2d 694, 696 (8th Cir. 1948). Given the district court's first-hand familiarity with the evidence, we would be disposed to affirm the injunction as within its discretion notwithstanding the above, were it not for a further difficulty. This latter and for us conclusive impediment standing in the way of the injunction

is the fact that the injunction did not issue until over a year after Michaelson's February, 1977 discharge. The date of its issuance was April 18, 1978. Michaelson's agreement with A–Copy was merely not to engage in the sales or servicing of copy equipment for a period of one year following the termination of employment. A–Copy argues that it should not be penalized because of the district court's delay, but it has not been able to call to our attention any Massachusetts authorities permitting specific enforcement, without prior agreement of the parties, after expiration of the contractual period.[1]

■ To the contrary, the Supreme Judicial Court of Massachusetts has indicated that when the period of restraint has expired, even where the delay was substantially caused by the time consumed in legal appeals, specific relief is inappropriate and the injured party is left to his damages remedy. *All Stainless, Inc. v. Colby, supra,* 364 Mass. at 777, 781, 308 N.E.2d at 485, 587; *see also Middlesex Neurological Associates, Inc. v. Cohen,* 3 Mass.App. 127, 324 N.E.2d 911, 913 n.1 (1975); *National Hearing Aid Centers, Inc. v. Avers,* 2 Mass.App. 285, 311 N.E.2d 573, 576 (1974). This principle has only been departed from pursuant to stipulation of the parties. *Middlesex Neurological Associates, Inc., supra* at 913 n.1. In contending that there is Massachusetts authority for the proposition that a negative covenant can be enforced prospectively from the date of the final court decision, A–Copy mistakenly cites *Marine Contractors Co., Inc. v. Hurley,* 365 Mass. 280, 310 N.E.2d 915 (1974). However, the injunction there entered did not extend beyond the originally agreed five years. The court concluded merely that the agreement not to compete for five years, though it "might be somewhat troublesome" because too lengthy, was reasonable in the circumstances since there remained only three years left to enforce. *Marine Contractors, supra,* 365 Mass. at 289–290, 310 N.E.2d at

---

1. A–Copy argues that the one year "following the termination of employment" provided for in the agreement, should be deemed to have been suspended during the period that Michaelson has violated the restriction. No clear authority for this approach is cited.

921 (*dicta*). Since the one-year covenant in the instant case expired on February 16, 1978, it cannot be specifically enforced, and A–Copy must look to monetary damages if it does eventually prevail on the merits. For this reason, we vacate paragraph (3) of the preliminary injunction.

The remaining portions of the injunction enforce the agreements against disclosure of plaintiff's alleged customer list and forbid the rendering of services to "any person or entity" (presumably defendant's corporation) to whom the list was disclosed "or threatened to be disclosed." (Pars. (1) and (2) of preliminary injunction.) A final provision forbids dealing with the plaintiff's customers or former customers. (Par. (4)) The district court refused to limit relief to that granted in paragraph (4) (*viz.*, without also enjoining Michaelson from engaging generally in the copying machine business in the area of his former employment) on the strength of the Massachusetts court's disapproval of such narrow relief by itself. *See All Stainless, supra,* 364 Mass. at 781, 308 N.E.2d at 487 (*dicta*). In light of our reversal of paragraph (3), we think it best to vacate and remand the balance of the injunction to the district court for further consideration. If the district court is satisfied that A–Copy has shown a sufficient probability of success, and that some part of the equitable relief granted in paragraphs (1), (2) and (4) is both feasible and necessary to avoid irreparable harm, and would be consonant with Massachusetts law, it may enter such relief. We note that there was confusion at the district court hearing as to what might be said to constitute a "customer list", making it desirable that any injunction define what is meant, or incorporate a list naming customers. The scope and intent of paragraph (2) of the injunction also seems obscure. If read literally, it might prevent Michaelson from working for his own company and anyone else from working for Michaelson *on any matter.* This would, of course, be inconsistent with our ruling as to paragraph (3). We also note the enforcement problems that could arise with respect to customers who desire to continue dealing with Michaelson. The dis-

trict court may conclude that A–Copy should be left to its legal claims for damages. But this is a judgment better left to it.

*Paragraph (3) of the preliminary injunction is reversed. The remaining paragraphs are vacated and remanded without prejudice to the district court for such further proceedings as it determines in light of this opinion.*