**MEDX, INC.**

v.

**Raymond T. RANGER.**

**Civ. A. No. 91–3099.**

United States District Court,
E.D. Louisiana.

March 13, 1992.

Tom W. Thornhill, David L. Thornhill, Thornhill & Thornhill, New Orleans, La., S. Daniel Ponce, Zack, Hanzman, Ponce & Tucker, P.A., Miami, Fla., for plaintiff.

Edward F. Kohnke, IV, James H. Brown, Jr., Lemle & Kelleher, New Orleans, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

Before the Court is the above-styled action, presented on briefs and documents and taken under submission for consideration of the issue of permanent injunctive relief. The Court hereby issues its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such; to the extent that any conclusions of law constitute findings of fact, they are so adopted. The findings of fact and conclusions of law contained in this Court's opinion of October 30, 1991, are incorporated by reference into this opinion.

### I. *Findings of fact*

On July 22, 1988, defendant Raymond T. Ranger entered into two interrelated contracts with plaintiff MedX, Inc. of Florida, a medical waste disposal company. These contracts consisted of an "Asset Purchase Agreement" and an "Employment Agreement." In section 1(a)(i) of the asset purchase contract, Mr. Ranger agreed to sell MedX his business, Specialty Waste Management, Inc. The purchase contract specifically provided that MedX was buying Specialty Waste's name, goodwill, going concern value, and substantially all of its assets. Mr. Ranger worked for MedX under the terms of the employment contract from July 22, 1988 until March 16, 1990.

MedX has brought suit to enforce its rights under the employment contract. Section 6 of that contract contains a covenant that purports to prevent Mr. Ranger from competing with MedX, accepting employment from its competitors, soliciting its clients or employees, or revealing its trade secrets, all for a period of two years from the end of his employment with MedX. Mr. Ranger was in violation of this covenant from January 1, 1991, to at least August 27, 1991, when this Court issued a temporary restraining order against him.[1]

On October 30, 1991, this Court granted MedX a preliminary injunction "to preserve the relative positions of the parties until a trial on the merits [could] be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).[2] MedX now demands that the Court grant permanent injunctive relief that would extend beyond the period called for by the covenant.[3] MedX asserts that Mr. Ranger competed with it for a period of some ten months, and that it is entitled to an extension of the noncompete period for an additional ten months beyond its contractual expiration date of March 16, 1992.

### II. *Legal background*

The standard for a permanent injunction is essentially the same as the standard for the preliminary injunction that is currently in effect. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987).[4] The primary difference is that the purpose of a permanent injunction is remedial: rather than locking the parties into the positions they held as of the outset of litigation, a permanent injunction should set aright wrongs that are not effectively compensable at law. *See id.*, 480 U.S. at

---

1. MedX alleges that Mr. Ranger continued to compete in violation of orders of this Court. The Court will not address MedX's allegation at this time.

2. *See MedX, Inc. v. Ranger,* 780 F.Supp. 398, 405 (E.D.La.1991).

3. MedX also requests that the geographical scope of the present injunction be expanded. For the reasons set out in this Court's opinion on the preliminary injunction, that request is denied.

4. *Accord Camenisch,* 451 U.S. at 392, 101 S.Ct. at 1832.

546, 107 S.Ct. at 1404; *Silvers v. Dis–Com Secs., Inc.,* 403 So.2d 1133, 1137 (Fla.App. 4th Dist.1981). As the parties have stipulated, MedX is clearly entitled to a permanent injunction to protect its interests until the expiration of the covenant on March 16, 1992. The question at bar is· whether MedX is entitled to an extended period of injunctive relief after that covenant expires. This question in turn raises three issues: whether extended injunctive relief is available under Florida law; whether MedX's claim for extended relief is justiciable; and whether equitable defenses available to Mr. Ranger warrant denial of the relief that MedX has demanded.[5]

### III. *Conclusions of law*

#### A. Florida law permits extended injunctive relief.

■ "Injunctive relief has become the favored remedy in cases involving covenants not to compete [because] money damages for breach of non-competition agreements are either not susceptible to proof with the required degree of certainty, or 'if susceptible of reasonable proof, may not compensate for all aspects of such a violation.'" *Cordis Corp. v. Prooslin,* 482 So.2d 486, 489 (Fla.App. 3d Dist.1986).[6] Accordingly, the Supreme Court of Florida has specifically approved the grant of extended injunctive relief:

> Inasmuch as the appellant had been in competition with the appellee continuously since his resignation, the chancellor must have determined that this was the only way to give the appellee its two competition-free years. We can find no fault with this theory or with the result of its application..... We think that the

procedure followed by the chancellor is the only way by which the provisions of the contract and the statute could be effectuated.

*Capelouto v. Orkin Exterminating Co.,* 183 So.2d 532, 535 (Fla.), *appeal dism'd,* 385 U.S. 11, 87 S.Ct. 78, 17 L.Ed.2d 10 (1966).[7] Denial of extended relief on the facts of this dispute might even constitute reversible error. *See Kverne v. Rollins Protective Servs.,* 515 So.2d 1320, 1321–22 (Fla.App. 3d Dist.1987).

■ Despite the authority set out above, Mr. Ranger asserts that a recent amendment to the Florida statute governing non-compete covenants requires MedX to demonstrate that he has caused it specific, ascertainable harm in order for the permanent injunction to extend beyond the contractual period. Citing *Hapney v. Central Garage, Inc.,* 579 So.2d 127, 133 (Fla.App. 2d Dist.), *review denied,* 591 So.2d 180 (Fla.1991),[8] he argues:

> [I]n order to be enforced in Florida, anticompetitive agreements must be reasonably related to a protection [sic] of a legitimate business interest of the employer. The implication which flows from that holding.... [is that competition] alone by the employee is not enough to warrant the courts upholding the anticompetitive contract. Instead, there must be a showing by the employer of the effect of that competition and that the competition by the former employee caused him some greater harm by virtue of the·prior relationship existing between the employer and the employee. Simply put, MedX has not offered any proof that Ranger's competition prior to the Court's Order caused it any specific harm. The

---

**5.** The first and third of these issues are contested by the parties; the second is considered by the Court *sua sponte* as a question concerning its subject matter jurisdiction. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559–60, 56 L.Ed.2d 30 (1978).

**6.** Quoting *Capraro v. Lanier Business Prods., Inc.,* 445 So.2d 719, 721 (Fla.App. 4th Dist.1984), *approved,* 466 So.2d 212 (Fla.1985). *Accord U.S. Floral Corp. v. Salazar,* 475 So.2d 1305, 1306 (Fla.App. 3d Dist.1985); *Capelouto v. Orkin Exterminating Co.,* 183 So.2d 532, 535 (Fla.), *ap-*

*peal dism'd,* 385 U.S. 11, 87 S.Ct. 78, 17 L.Ed.2d 10 (1966); *Miller Mechanical, Inc. v. Ruth,* 300 So.2d 11, 12 (Fla.1974).

**7.** *Accord Mathieu v. Old Town Flower Shops Inc.,* 585 So.2d 1160, 1161 (Fla.App. 4th Dist. 1991); *Xerographics, Inc. v. Thomas,* 537 So.2d 140, 143 (Fla.App. 2d Dist.1988); *Cordis Corp. v. Prooslin,* 482 So.2d 486, 491 n. 3 (Fla.App. 3d Dist.1986).

**8.** The amendment's effects are retroactive. *See Hapney,* 579 So.2d at 134.

Court should, for that reason, deny the claimed extension.[9]

This argument misinterprets *Hapney.* While that opinion did hold that "the existence of a legitimate interest of the employer to be protected is a threshold condition to the validity of a covenant not to compete ...," it also specifically recognized the following as legitimate business interests under Fla.Stat. § 542.33: "(1) trade secrets and confidential business lists, records, and information, (2) customer goodwill, and (3) to a limited degree, extraordinary or specialized training provided by the employer." *Id.* at 131. The third of these interests is not implicated by the facts of this case, but the first and second are central to the dispute at bar. Moreover, the statutory revision does not increase the required showing of harm for covenants like the one between Mr. Ranger and MedX.[10] Thus, in light of the showing that MedX has made of the substantial threat that Mr. Ranger poses to its legitimate business interests,[11] the covenant is reasonably related to the protection of those interests under *Hapney.*

Finally, as this Court's prior opinion noted at some length, it can be extremely difficult to prove that specific, concrete harm has resulted from the violation of a noncompete covenant. It is for precisely this reason that the Court ruled that the preliminary injunction was necessary to protect MedX from suffering harm for which it would have no meaningful remedy at law in the courts. *See Canal Auth. of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974).[12] Accordingly, because MedX has already made the requisite showing of "irreparable injury", requiring it to show specific, concrete injury would defeat the *raison d'etre* for injunctive relief.[13] Thus, Florida law admits of the remedy that MedX seeks.

**B. MedX's claim for extended injunctive relief is justiciable.**

■ There is substantial support among the Federal courts of appeals for the proposition that it is inappropriate "to grant an injunction to enforce an agreement by a former employee not to compete after the period during which the employee agreed not to compete [has expired]." *Economics Laboratory, Inc. v. Donnolo,* 612 F.2d 405, 408 (9th Cir.1979).[14] On facts similar to those of the case at bar, some courts have characterized disputes over expired covenants as nonjusticiable due to mootness. *See, e.g., Olin Water Servs. v. Midland Research Laboratories, Inc.,* 774 F.2d 303, 306 (8th Cir.1985) ("Because [the district court's preliminary injunction] was premised on the contractual agreement [, which] has expired by its own terms, there is no possibility of future injunctive relief, preliminary or permanent, being imposed against [a defendant] on this ground.").[15]

---

**9.** Brief on Behalf of Defendant, Raymond T. Ranger, filestamped January 31, 1992, at 5–6.

**10.** *See Hapney* at 133 n. 4 (noting a legislative staff analysis of the effect of the proposed changes to the statute: " 'The bill would continue to allow the presumption of irreparable injury in connection with the use of trade secrets, customer lists, or direct solicitation of existing customers.' ").

**11.** *See MedX, Inc. v. Ranger,* 780 F.Supp. 398, 403 (E.D.La.1991).

**12.** *Accord Taylor v. Cordis Corp.,* 634 F.Supp. 1242, 1250 (S.D.Miss.1986).

**13.** *See Restatement (Second) of Contracts* § 360, comment b, at 172 (1982) ("The breach of a covenant not to compete may cause the loss of customers of an unascertainable number or importance.").

**14.** *See, e.g., Gaylord Broadcasting Co. v. Cosmos Broadcasting Co.,* 746 F.2d 251, 253 n. 2 (5th Cir.1984); *Moraine Indus. Supply v. Sterling Rubber Prods. Co.,* 891 F.2d 133, 135 (6th Cir. 1989); *DeLong Corp. v. Lucas,* 176 F.Supp. 104, 109 (S.D.N.Y.1959), *aff'd,* 278 F.2d 804 (2d Cir. 1960), *cert. denied,* 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58 (1960). The relevance of this consensus to the case at bar is limited by two factors: the noncompete period has not yet expired, and the covenant at issue was ancillary to the sale of a business. To test MedX's claims more strenuously, however, the Court will accept the consensus in the light most favorable to Mr. Ranger.

**15.** The Court is aware that mootness on review in an appellate court may differ from mootness on consideration of the merits. Nonetheless, it is appropriate to exercise great care in ascertaining the boundaries of Federal jurisdiction in order to avoid trespass across those boundaries.

Similarly, the Fifth Circuit has ruled that a dispute over a Louisiana noncompete covenant was moot due to the expiration of the term of a proposed preliminary injunction based upon the covenant. *Gaylord Broadcasting Co. v. Cosmos Broadcasting Co.,* 746 F.2d 251 (5th Cir.1984). Moreover, the court specifically refused to extend the term of the covenant: "The parties may contractually provide for the tolling of the noncompete period, if an employee breaches a covenant not to compete and the resulting civil proceedings to enforce the covenant consume more time than the period of the covenant itself. The contract in this case did not so provide." *Id.* at 253 n. 1. The court relied upon the First Circuit's decision in *A–Copy, Inc. v. Michaelson,* 599 F.2d 450 (1st Cir.1978), a case that applied Massachusetts law, to reach this result.

■ Despite the authority cited above, the Court finds that there is no impediment to extended injunctive relief in this matter. The test for mootness is whether the parties "lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1969). Under Florida law, extended relief is clearly available once the proper evidentiary showing has been made; thus, MedX's claim for extended relief is "legally cognizable" within the meaning of *McCormack. See Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown,* 948 F.2d 1436, 1446 (5th Cir.1991). Similarly, because the contract specifically calls for injunctive remedies under Florida law, the deficiency that the Fifth Circuit found in the *Gaylord Broadcasting* contract is not present in the case at bar. The other circuit court opinions that militate in favor of a finding of mootness are likewise distinguishable.

Because the substantive rules of decision in this case are provided by Florida law,[16]

*Donnolo, Moraine Supply, Lucas, Olin Water, Michaelson,* and like cases are inapposite in that they reflect bodies of law that, unlike Florida's, are hostile to extended injunctive relief. As the Fifth Circuit noted, "[t]he First Circuit [in *Michaelson* ] relied upon Massachusetts cases that apparently held that when a period of restraint has expired, specific relief is inappropriate, and the injured party is left to his damages remedy." *Gaylord Broadcasting,* 746 F.2d at 253. In following *Michaelson*'s ruling that a noncompete period should not be tolled, and should not therefore be extended, it seems likely that the Fifth Circuit relied similarly upon the lack of jurisprudential support for tolling under Louisiana law. This conclusion resolves the apparent tension between *Gaylord Broadcasting* and the Fifth Circuit's previous holding in *Premier Indus. Corp. v. Texas Indus. Fastener Co.,* 450 F.2d 444 (5th Cir.1971), where the court applied Ohio law.

In *Premier Industries,* the court ruled that, in light of the district court's stay of injunctive relief pending appeal, "[i]t would be pointless to affirm the court below, only to have that court's relief terminate in January, 1972, a few months hence. We therefore sustain appellee's right to enjoyment of its injunctive relief for a meaningful period of time." *Id.* at 448. Thus, the district court's grant of relief extending beyond the contractually specified period was appropriate. *Id.* Because *Gaylord Broadcasting* did not purport to overrule or distinguish *Premier Industries,* it appears that the difference in outcome between the two cases is due to a difference in underlying state law.[17] In any event, the latter opinion permits extended injunctive relief on the facts of the case at bar. *See Tropicana Prods. Sales v. Phillips Brokerage Co.,* 874 F.2d 1581, 1583 (11th Cir.1989) ("this Court has been willing af-

---

**16.** *See Molex, Inc. v. Nolen,* 759 F.2d 474, 477 (5th Cir.1985) (applying state law to determine validity of permanent injunction issued to enforce noncompete agreement); *Capital Tool & Mfg. Co. v. Maschinenefabrik Herkules,* 837 F.2d 171, 172 (4th Cir.1988) ("There can be little doubt that [state law] would govern the grant of a final injunction in diversity cases").

**17.** An alternative explanation is that *Premier Industries,* like the case at bar, concerned a final ruling on the merits, whereas the *Gaylord Broadcasting* opinion reviewed a district court's denial of a preliminary injunction.

ter a trial on the merits to extend injunctive relief beyond the period of time which might be established under the literal terms of a disputed contract."; citing *Premier Industries* ).

C. Equitable defenses do not warrant denial of the relief that MedX has demanded.

Before the 1990 statutory revision, the following was clearly an accurate statement of Florida law: "A court is not empowered to refuse to give effect to a covenant not to compete on the basis of finding that the enforcement of the contract's terms would produce an unjust result by causing an overly burdensome effect upon the employee." *Sarasota Beverage Co. v. Johnson,* 551 So.2d 503, 507 (Fla.App. 2d Dist.1989).[18] Mr. Ranger contends, and at least one Florida appellate court agrees, that the statutory revision has "authorize[d] the courts to apply traditional equitable principle [sic] in cases of this nature to avoid unfair and unjust results, as urged by Justice Overton in his dissent in [*Keller II,* i.e. *Keller v. Twenty–Four Collection, Inc.,* 419 So.2d 1048 (Fla.1982) ]." *Hapney v. Central Garage, Inc.,* 579 So.2d 127, 133 (Fla.App. 2d Dist.1991). That dissent makes reference to "harsh", "oppressive", or "harmful" results to an employee as grounds for denying injunctive relief: "It is incomprehensible to me that a trial judge is prohibited from considering an 'unjust result' when determining whether injunctive relief is appropriate." *Keller II,* 419 So.2d at 1049.

Mr. Ranger interprets both the amended statute, and the *Keller II* dissent as adopted by *Hapney,* to mean that if extended injunctive relief would impose inequitably severe burdens on Mr. Ranger, then such relief ought not be granted.

This interpretation appears to misapply the thrust of the *Keller II* dissent, which dealt with an employer/employee noncompete agreement. Under Florida law such a covenant is different from the one MedX seeks to enforce [19] in that employer/employee covenants are subject to stricter scrutiny.[20] Moreover, Justice Overton's dissent stressed the employer's improper motive of "making an example" of the employee, whom it seems the employer had terminated wrongfully. *Keller II* at 1049–50. This appears to be an invocation of the "clean hands" doctrine. The Court notes that Mr. Ranger has advanced no credible evidence that MedX's conduct toward him in their dealings has been anything other than forthright.

Nonetheless, to test Mr. Ranger's contentions fully, the Court will assume *arguendo* that the effect of the 1990 revision is to make traditional equitable defenses available to him in opposing the injunctive relief that MedX demands. His allegations appear to assert two such defenses, each of which is discussed independently below.

### 1. Inequitable impact

■ Mr. Ranger urges the Court to invoke its power "to apply traditional equitable principles in cases of this nature to avoid unfair and unjust results." *Hapney v. Central Garage, Inc.,* 579 So.2d 127, 133 (Fla.App. 2d Dist.1991). He asserts that an extension of the noncompete period would be unfair and unjust in that it would cause him to lose his current employment, and "drive him from the business in which he has been employed since 1978. It would mean that he would be unable to support his wife and two children. He will likely lose his home." [21] He asserts that the employer for which he has worked in violation of the noncompete covenant is willing to

---

**18.** Accord *Xerographics, Inc. v. Thomas,* 537 So.2d 140, 143 (Fla.App. 2d Dist.1988); *Twenty Four Collection, Inc. v. Keller,* 389 So.2d 1062, 1063 (Fla.App. 3d Dist.1980), *review denied,* 419 So.2d 1048 (Fla.1982).

**19.** This Court has ruled previously that the employment agreement was ancillary to the sale of Mr. Ranger's business. *See MedX, Inc. v. Ranger,* 780 F.Supp. 398, 401 (E.D.La.1991). *Accord*

Morgan, *If at First You Don't Succeed: Louisiana's Latest Statutory Enactment Governing Agreements Not to Compete,* 66 Tul.L.Rev. 551, 571 (1991).

**20.** *See* text following note 8, *supra.*

**21.** Brief on Behalf of Defendant, Raymond T. Ranger, filestamped January 31, 1992, at 3.

wait for the expiration of that covenant on March 16, 1992, but no longer.

■ Mr. Ranger's inequitable impact argument centers around the prospect of his losing employment that he should never have sought or accepted. It appears to the Court that Mr. Ranger comes before it with unclean hands. It seems that even as he signed the covenant, Mr. Ranger intended to compete with MedX, relying upon the representations of his former counsel that such a covenant would not be enforceable. Equity will not protect one who enters into a contract with the intention of breaking it. *See, e.g., Carmen v. Fox Film Corp.*, 269 F. 928 (2d Cir.), *cert. denied*, 255 U.S. 569, 41 S.Ct. 323, 65 L.Ed. 790 (1920).[22]

Even assuming clean hands, however, the contract itself contradicts Mr. Ranger's assertions. Paragraph 6(e) of the employment agreement recites in part that "[t]he Employee acknowledges that ... he will be able to earn a living and provide for his family without violating the foregoing covenants." Such a recital cannot by itself determine the issue it addresses. *See Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir.1987). However, because the parties dealt with one another at arm's length, with no taint of coercion or adhesion, this recital militates in favor of MedX and complements the Court's reasoning on the equity-based arguments that Mr. Ranger has put forward.

Furthermore, Mr. Ranger greatly exaggerates the likely impact of the proposed extension. Both currently and under the extension as granted herein, the injunction applies only to the portion of the state of Louisiana that lies to the east of the Atchafalaya River. In its previous opinion in this matter, this Court ruled that "[e]nforcement of the noncompete covenant within these boundaries will not unduly burden Mr. Ranger in making his living and supporting his family." [23] The extension will not, therefore, deprive him of the ability to ply his accustomed trade. Admit-

tedly, it will put him at the disadvantage of operating for a time in an area that is unfamiliar to him, without a preexisting customer base. This is precisely the disadvantage that his sale of the goodwill of his business was intended to bring about. This inequity, if indeed it is one, is necessarily "present in almost every case of this nature," and cannot warrant denial of the extension. *Capelouto*, 183 So.2d at 535.

### 2. Laches

■ "In accord with the discretionary character of the injunction remedy and the venerable maxim that 'equity aids the vigilant, not those who slumber on their rights,' a plaintiff who is guilty of laches will be denied an injunction." Wright & Miller, *Federal Practice and Procedure: Civil* § 2946, at 417 (1973) (citations omitted). Thus, according to Mr. Ranger:

> [I]n *Edwin K. Williams & Co.–East v. Hunt*, 346 So.2d 1198 (Fla.[App. 1st Dist. 1976), *review denied*, 346 So.2d 1248 (Fla.1977)], the Court of Appeals was faced with a situation where the plaintiff had waited almost until the end of the contract period before seeking to assert its claim. In light of this fact, the chancellor determined that there were no grounds for equitable modification of the contract period. The appellate court noted that this holding was within the chancellor's discretion and affirmed.... The same reasoning applies in the instant litigation. MedX's own evidence shows that it was aware of Ranger's actions at least as early as April, 1991. It filed this action in August, 1991, and, at that time, sought no extension of the contract period.[24]

While Mr. Ranger properly characterizes the *Hunt* case, that case is factually distinguishable on the ground that MedX did not wait until the end of the contract period to bring suit. As he notes, MedX's awareness of his actions in April, 1991, is evidenced by

**22.** *Accord* Wright & Miller, *Federal Practice and Procedure: Civil* § 2946, at 413 (1973).

**23.** *MedX, Inc. v. Ranger*, 780 F.Supp. 398, 404 (E.D.La.1991).

**24.** Brief on Behalf of Defendant, Raymond T. Ranger, filestamped January 31, 1992, at 12.

its protests against those actions.[25] There is therefore no question of acquiescence on the part of MedX or reasonable reliance on the part of Mr. Ranger. The Court finds that under the circumstances of the case at bar, MedX showed neither inappropriate haste to litigate, nor negligent disregard of its contractual rights. Likewise, MedX's initial failure to seek an extension of the contractual period has no bearing on the laches issue. Laches applies to the failure of a party to defend its rights, not to the failure to demand a particular remedy at the outset of litigation.[26] Thus, no equitable considerations warrant denial of extended injunctive relief in this dispute.

D. Summary.

Mr. Ranger violated the noncompete covenant for at least eight months. MedX claims that he did so for a longer period, in violation of this Court's orders to the contrary. Because MedX's Motion for Contempt is pending, it is premature to address MedX's claim at this time, despite certain evidence that it has adduced in support of that claim. For the moment, the Court will assume that Mr. Ranger complied as he ought with the orders previously issued in these proceedings. Accordingly, without prejudice to any action that might be appropriate after the contempt motion is resolved, the Court will extend the noncompete period for eight months from the date of the covenant's expiration. This will remedy Mr. Ranger's breach by granting MedX the enjoyment of the two full years provided for in that covenant.

Accordingly,

IT IS ORDERED that, effective immediately, permanent injunctive relief is hereby granted to MedX, Inc. of Florida according to the following specifications:

(1) *RAYMOND T. RANGER* is ENJOINED from performing any of the following acts:

(a) maintaining or accepting employment with any person, organization, or entity that competes with *MedX, Inc. of Florida,* or that directly or indirectly services or solicits customers who dealt with MedX during the term of Ranger's employment with it, in that portion of the state of Louisiana that is located east of the Atchafalaya River;

(b) providing or offering to provide services similar to those of MedX to any person, organization, or entity located within the area described above;

(c) interfering with business relations between MedX and any person, organization, or entity with which MedX had business dealings between September 16, 1989 and March 16, 1990. This includes, but is not limited to, solicitation of MedX's customers.

(2) The permanent injunction granted by this Order shall TERMINATE and be of no further effect at 12:01 a.m. on *November 16, 1992.*

---

**25.** *Id.* at 2.

**26.** The situation at bar is distinct from a complete failure to demand injunctive relief immediately upon filing. If MedX had not made such a demand, an inference might well have arisen that no exigency was present, and that no subsequent demand for injunctive relief should be granted.