**In re BANNER YACHTS, INC., Debtor.**

**John J. HUNTER, Trustee, Plaintiff,**

v.

**LEASE SEA, INC., et al., Defendants.**

**Bankruptcy No. 90–0126.**
**Related Case: 89–02070.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 6, 1992.

John J. Hunter, Trustee, Toledo, Ohio.

David Wicklund, Toledo, Ohio, for defendant.

Elizabeth A. Vaughan, Trustee of Lease Sea, Inc., Toledo, Ohio.

Raymond L. Beebe, Toledo, Ohio, for Lease Sea, Inc.

Vaughn A. Hoblet, Toledo, Ohio.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon both Plaintiff's and Defendant's Motions for Summary Judgment. Plaintiff seeks an order granting permission to sell a yacht bearing identification number KYS52159C888 free and clear of liens. Conversely, Defendant seeks an order declaring the Bankruptcy Estate to have no interest in said yacht. The Court has reviewed the written arguments of counsel and the relevant case and statutory law, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that Defendant's Motion for Summary Judgment should be Granted. The Court further finds that Plaintiff's Motion for Summary judgment should be Denied.

## FACTS

The following facts were agreed upon by all parties and set forth in a Stipulation of Facts filed with the Court.

In 1988 Her Shine Marine Co., LTD., based on the island of Taiwan, finished construction of a 51'7" yacht bearing hull identification number KYS52159C888 (hereinafter "the vessel") for Kentuckiana Yachts, Inc., (hereinafter "Kentuckiana"). Kentuckiana then sold the vessel by bill of sale to Banner Yachts, Inc., (hereinafter "Banner") on or about April 5, 1988. As part of the transaction, Kentuckiana delivered to Banner a builder's certification, and a federal bill of sale. Kentuckiana also prepared and executed a manufacturer's statement of origin in the name of Banner. In accordance with the security agreement between First Federal Savings and Loan Association (hereinafter "First Federal") and Banner, Kentuckiana then delivered the statement of origin to First Federal which had financed Banner's transaction. Banner accepted possession of the vessel in either late March or early April of 1988 in Baltimore, Maryland.

Thereafter, on April 29, 1988, Banner sold the vessel to Lease.Sea, Inc., (hereinafter "Lease Sea"). Once again First Federal financed the purchase. Financing necessary for purchase of the vessel was advanced against Lease Sea's basic line of credit and Banner was thereby paid for the yacht. Banner, in turn, paid First Federal Two Hundred Seventy-one Thousand Six Hundred Seventy–Four Dollars ($271,-674.00) to be applied to its (Banner's) debt to First Federal incurred through the original sale. First Federal then carried the vessel, now in the possession of Lease Sea, as security against the debt owed it by Lease Sea.

In connection with the sale of the vessel from Banner to Lease Sea, First Federal temporarily relinquished physical possession of the statement of origin so that the president of Banner could execute a transfer of ownership. Mr. Forrest Roberts, President of Banner, executed the required transfer of ownership (appearing on the reverse side of the statement of origin),

before a notary on April 29, 1988. After the transfer was signed, the manufacturer's statement of origin was returned to First Federal and has remained in its possession.

After purchasing the vessel from Banner, Lease Sea took possession of it and offered it for sale to the public.

On May 22, 1992 Resolution Trust Corporation (hereinafter "RTC"), acting as conservator and receiver for Defendant, First Federal, filed a Motion for Summary Judgment based on the premise that through the sale of the vessel Plaintiff had relinquished all interests he once had in the vessel. On June 26, 1992, Plaintiff also filed a Motion for Summary Judgment.

The issue confronting this Court is whether a manufacturer's statement of origin, in the possession of First Federal and lacking any reference to a lien in favor of First Federal, is enough to furnish Defendant, with a valid perfected security interest in the vessel.

### LAW

Initially, Plaintiff construes Section 1548.20 of the Ohio Revised Code to mean that Defendant lacks an effective security interest in the vessel by reason of the fact that there was no notation of its lien on the manufacturer's certificate. This contention is without merit. For the language used in section 1548.20 of the Ohio Revised Code is quite clear and leads to but one conclusion in its stipulation that:

> Any security agreement covering a security interest in watercraft ... if such instrument is accompanied by delivery of a manufacturer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument ... shall be valid.

Ohio Rev.Code Ann. § 1548.20 (Andersen 1990).

Since First Federal held the manufacturer's statement of origin continuously during the time that Banner and Lease Sea owned the vessel, it holds a valid interest in the vessel. Consequently, it is entitled to full compensation should the vessel be sold.

■ Plaintiff counters, however, that First Federal's temporary relinquishment of control over the manufacturer's certificate to the President of Banner interrupts the continuous possession contemplated by Section 1548.20 of the Ohio Revised Code. The Court finds this contention unpersuasive. Ohio Revised Code § 1548.05 plainly requires that in order to consummate an effective transfer:

> An assignment of a manufacturer's or importer's certificate before a notary public ... shall be printed on the reverse side of the manufacturer's or importer's certificate in the form prescribed by the chief.

Ohio Rev.Code Ann. § 1548.05 (Andersen 1990).

In light of this section, it is clear to the Court that the relinquishment of the certificate was necessary so that Mr. Roberts, president of Banner, might effectively transfer title before a notary public. As a result, First Federal can be deemed to have constructively retained continuous possession for purposes of Section 1548.05.

■ Plaintiff then argues that the builder's certificate which it possessed takes precedence over the manufacturer's statement of origin held by First Federal. Defendant, however, correctly argues that, under 46 U.S.C. § 12101–22 (1988) a builder's certificate would only have allowed Banner to obtain a certificate of documentation. Banner, however, never did so. Moreover, even had Banner done so, Sec. 12104(3) clearly provides that a certificate of documentation, is, "not conclusive evidence of ownership in a proceeding in which ownership is at issue." 46 U.S.C. § 12104(3) (1988).

Although Plaintiff maintains that ownership of the vessel is not at issue in this proceeding, the Court does not agree. While it is true that the Court's primary objective here is to determine the validity of First Federal's lien, it may only do so by considering the intertwined ownership issue as well.

In dealing with a problem similar to the one at bar, the court in *Chase Manhattan*

*Financial Services v. McMillan*, 896 F.2d 452 (10th Cir.1990), addressed the issue of whether a builder's certificate took precedence over a manufacturer's statement of origin. Appellant there argued that under Oklahoma law the manufacturer's statement of origin did not constitute a "document of title" because Appellee failed to complete the endorsement form stating all liens. *Id.* at 460. The court, relying on U.C.C. § 2–501, found Appellant's argument untenable. *Id.* That section in pertinent part states:

> (1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers ... in the absence of explicit agreement identification ...
>
>> (b) if the contract is for the sale of future goods ... when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers....

U.C.C. § 2–501 (1992).

Based thereon, the court held that, "the builder's certificate is prima facie, but not conclusive, evidence of title because it is part of the ... certificate of documentation process." *Chase* 896 F.2d at 460; *see* 46 U.S.C. § 12104(3) (1988). As a result, the court found the manufacturer's statement of origin and the sales agreement together constituted a valid contract and established title. *Id.*

In the instant case, Banner sold the vessel to Lease Sea on April 29, 1988. This constituted a final relinquishment of any ownership rights in the vessel. By virtue of the fact that First Federal financed the transactions between Kentuckiana and Banner, and between Banner and Lease Sea, First Federal retained possession of the manufacturer's statement of origin thereby satisfying Section 1548.20 of the Ohio Revised Code. Using the rationale of *Chase* and U.C.C. § 2–501 it is clear that a manufacturer's statement of origin is superior to a builder's certificate. The manufacturer's statement of origin, when combined with a "sales agreement" (here manifesting itself in the form of the loan agreement between First Federal and the respective borrowers) gives title to Defendant, holder of the statement of origin. Consequently, Defendant's failure to note its lien on the face of the manufacturer's statement of origin is not fatal to its interest in the vessel.

Plaintiff further argues that because first Federal "knew" that Kentuckiana was not the manufacturer of the vessel, First Federal could not perfect a valid security interest therein. The Court disagrees. Section 1548.05 of the Ohio Revised Code plainly stipulates that:

> No manufacturer, importer, dealer, or other person shall sell or otherwise dispose of a new watercraft ... to a dealer to be used by such dealer for purposes of display and resale, without delivering to such dealer a manufacturer's ... certificate executed in accordance with this section.

Ohio Rev.Code Ann. § 1548.05 (Andersen 1990).

Given the language of the section quoted above, it is irrelevant whether or not the conveyor of the manufacturer's certificate was in truth the manufacturer. It is significant, however, that the conveyance be executed in accordance with Section 1548.05 of the Ohio Revised Code, which was, in fact, done. Consequently, because First Federal continuously possessed the duly executed paperwork required to convey an interest in the vessel under the Uniform Commercial Code and Ohio State law, the court finds First Federal to have a valid perfected security interest in the vessel.

Having determined from the stipulated facts that First Federal has a valid security interest in the vessel, the Court finds that there is no issue of material fact remaining to be resolved in this matter. Therefore, RTC as First Federal's conservator is entitled to the full value of its interest in the vessel.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically mentioned in this opinion.

Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED.

It is FURTHER ORDERED that Plaintiff's Motion for Summary Judgement be, and hereby is, DENIED.